Number 237549, Srour v. New York City, et al. Good morning, Your Honors. May it please the Court, Alina Drucker on behalf of the City. Your Honors, the decision to enter a permanent injunction in this case was deeply flawed, both as a matter of state law and as a matter of the Second Amendment. But this Court need not, actually cannot, reach the merits here because there are two independent jurisdictional obstacles. In chronological order, first, that Mr. Srour did not have standing at the time that the District Court entered its order because he had not been injured or shown that it would be futile to apply under the current regulatory regime. And second, during the pendency of this appeal, shortly before our reply brief was due, as explained in our brief, he actually obtained a permit. And now that he has a permit, he has no ongoing interest in this case at all. Or at least on this claim that's on the appeal, which is why we asked this Court to issue a Munsinger vacater, vacate the decision, which would have extreme, I mean, the standard for a Munsinger vacater is of having any legal consequences that are rendered unreviewable. So on the mootness issue, which you point out you raised in the reply brief, as I understand it, but you can correct me at any point if I've failed or mischaracterized the chronology, he sues. As the suit is progressing, he still does not have a license? No, that's already wrong. Sorry. I'm already wrong. Yeah, I'm sorry. He filed an application in 2019 before Bruin, and he immediately saw it. He filed his lawsuit before Bruin was decided, and he didn't have a new application going then. And then the District Court put his case on hold while Bruin was being litigated. Then the CCIA was enacted. Then the city enacted its rules. Then his case unpaused. He had not filed any new application under the new regulatory regime, and he maintained that the 2019 denial of his application gave him standing to seek both damages, retrospective claims, which we don't dispute, and prospective relief in joining the new regulatory regime under which he had never applied. He claimed that the fact that the language, good moral character, notwithstanding the fact that the definition, everything else had changed, because that language persisted, there's no difference and he should maintain his case. Of course, there's been a sea change in the law between now and then, and we pointed that out in our papers in response to his motion for a summary judgment, including entry of a permanent injunction, which was entered erroneously. And at that point, the day after we filed our notice of appeal, he finally filed an application with the NYPD seeking a license under the current regulatory regime, both for a handgun permit and for the rifle shotgun permit. So he hadn't had anything pending until the appeal was going. I think, I mean, you make this argument in your brief, which I'm not sure I'm on board with, but the idea that the regulations, yes, did change pre- and post-Bruin, the code itself did not. And so he filed challenging the administrative code, which said one thing pre-Bruin, and it still says the same thing post-Bruin. I accept the idea that how it's going to be implemented, the regulations are relevant to that, but this idea that he doesn't have standing because he hasn't applied under the new regs when the statute, effectively the code, is the same, I mean, mootness is sort of a different issue. But as far as standing in the first instance, I don't see how he doesn't have standing. Now, the claim could be mooted, but he challenged the administrative code that was in effect at the time, and that code has not changed despite the fact that the regs have changed. I think the best way to understand it is that the regulatory scheme, the code, is a local law. The local law doesn't define good moral character. It has always left it to the NYPD's regulations. I know those regulations aren't just like policy that are issued on an ad hoc basis. That goes through notice and comment comparable to federal administrative rulemaking. So Congress doesn't need to pass a new law when there has been robust rulemaking that channels some perhaps more broad language. And that language, there's no real way to claim that it is the same because the New York City regulations that the NYPD implemented through public notice, comment, rulemaking, 60-day public hearing, that rule takes language used in the CCIA by the state, which is a whole new legislative scheme for handgun licensing coming after Bruin, and in fact takes language that is discussed nearly verbatim with approval in Bruin itself. So to say that nothing has changed, which is what his policy is, I mean, I think the idea is that what you challenge is the regulatory regime. You're not challenging a stray line in it. The word the may continue from before and after as well, but it is a functionally different standard. Right. No, no. I'm not saying nothing has changed, but the regulations, the point of whether or not they're standing here, the code has not changed. And so the way that your argument is sort of framed in the brief is he doesn't have standing because the regs changed, and so he hasn't applied under the new regs. That's right. He applied under the code, the original code, and the language of that has not changed. And so the idea that that is what takes away his standing, and perhaps it's not ultimately relevant to what we need to decide here, but your characterization of that as a failure of standing doesn't seem accurate to me. But in any event, there's still a particular mootness question. I do think that it does because I think that the regulatory regime taken as a whole is a completely different beast. In any event, you argue mootness. Exactly, and in any event. At least insofar as his complaint seeks an injunction, I suppose, which is the only thing he's appealed here. Insofar as he's seeking an injunction, this issue is moot. He obtained a preliminary injunction. I think that's the critical point. He obtained a permanent injunction of the local law, and the local law doesn't operate independently of the regulations. I think that this actually goes to your earlier question, which is the district court seemed to believe that the regulations persist even after the underlying local law has been eliminated. But the implementing regulations, they disappear because they are implementing a local law. So this regulatory regime, which was appropriately channeled and amended following Bruin and following the CCIA, is no longer in effect because of this injunction, which is why the Munsinger vacater is required. But I'd also note that it's also why he really didn't have standing, because the relief that he sought and the injury that he claimed was an inability to obtain a rifle shotgun permit. And the only proof that he had prior to that was this 2019 denial. And it's true that the law, the local law, remained in effect. But all the local law said was good moral character, basically as to be defined by- When you asked for a vacature arising from the mootness issue, you pointed out that you did not appeal the retrospective relief determination. Is that correct? That's right. Is that part of the judgment? It's not. Well, there is. That's a great question. I think that the court bifurcated liability and damages. And the plaintiff also abandoned all of his as-applied claims. So to the extent he has a lingering claim before, that's part of the judgment. It would be a claim for damages retrospectively. And I believe that that claim is still outstanding. But I'm not trial counsel. When you say- It still exists below. Because the decision here focused on the forward-looking claims. But you're asking us, as a result of a mootness determination, to vacate the judgment. To vacate the permanent injunction that bars enforcement of the character assessment for all permitting for rifles and shotguns in the city of New York. So unrelated to the determination about retrospective relief. Whether his 2019 denial was a violation of the Second Amendment, it was not. And I could explain why it's not, but that's a separate matter. It's not before us. Not before you. If the court has further questions, I'm happy to address this. So just mechanically, what you're asking for is a vacature of the injunction. Vacature of the injunction, yes. And leaving the retrospective relief alone. I believe the retrospective relief is incorrect. I understand that. But it is not- You have not appealed it. But yeah, but it's not moot. Here's my problem. My problem is you're asking us, initially I thought you were asking us to vacate the judgment. Because ultimately you view that as unfair to you, having it stop district court decision and judgment. But there's a retrospective relief issue or determination that is not before us because you decided not to cross appeal. The course- Not to appeal that, I'm sorry. Right. The court did not grant judgment on those claims. The court denied his motion for summary judgment on those claims. So those claims are still pending below, is my understanding. You're asking us to vacate the injunction that was granted, but to do so on the ground of mootness. In a manner that would not say one thing or another about whether there was a violation of the Second Amendment. Well, I think that this court has options because these are both jurisdictional defects. This court can find that Mr. Swer lacked standing to seek prospective relief against a regime that he had never been denied a license under. Or this court could find that it need not reach that question. Because now, in any event, the appeal is moot and vacate the decision. But in either case, it would address only his application for prospective relief. And it would say nothing whatsoever about whether there was a denial of the Second Amendment when he didn't get the license that he applied for in 2019. That's right. We would not be addressing that. You would not be addressing that issue. I'm happy to address that issue. But those claims, this was Mr. Swer's motion for summary judgment. Those claims could continue. I think that they are meritless. But they are not before this court. The claims that are before this court are the affirmative relief that was granted to him in the form of a permanent injunction enjoining the city from ever enforcing, for this applicant or any other applicant, the ability to look at moral character when issuing rifle and shotgun licenses. That was wrong. Thank you very much. Do you reserve some time for rebuttals? We'll hear from your friend on the other side. Good morning, Your Honors. Amy Bellantoni for the appellee, Joseph Soror. May it please the court. In listening to the city's arguments with regard to mootness, this case is not moot and the decision itself should not be vacated. The court did find that the city failed the Bruin test, failed to justify its regulations with regard to the administrative code 10-303, specifically subsections A2 and A9, and Mr. Soror's monetary damage claims remain. So vacating the opinion itself. Your adversary is not claiming that the case is moot. Your adversary is claiming that the question whether he's entitled to an injunction, which was granted, that that is moot. Nothing to do and we would not be addressing in any way whether he was injured unlawfully, unconstitutionally, by the denial of a license in 2019. Very good. Now that that is clear, because it was not clear because there were additional arguments made by the city. Irrespective. Mr. Soror. When you say very good, there's a question about whether, does that mean that you agree that the question relating to this prospective injunction is moot? I do not. My very good comment was I'm glad that that has been narrowed because it was not clear to me that that was the only issue being discussed by the city. With regard to the permanent injunction of the administrative code section, this harm to Mr. Soror is capable of repetition, yet evading review. I'll hearken to the Honig case, Honig versus Doe out of the Supreme Court, which was a special education case. In some, there was a plaintiff who was at the age of 20 still. Why evading review? Evading review because if the permanent injunction is, that portion of the order is dismissed. If he's denied a license, if he is making an application for a license and it's denied, he gets review. Well, there's- Evading review means that the circumstances are such that the person has no opportunity to have a court or whatever is the appropriate entity look into the lawfulness of the denial. But where's the evading review here? Well, the second part of that term is that it's capable of repetition. And if the permanent injunction is not maintained, then Mr. Soror is likely to suffer harm in the future. He still remains subject to, as a licensee- Why does it evade review? It's evading review because he will not have the permanent injunction protecting him going forward. And he is still, it is still capable of repetition. He would still be susceptible to harm going forward. So what you're saying is if we agree with the city and vacate the injunction, then that opens the door to repeat action. That's what I'm saying. But that then can still be reviewed. I mean, you can sue again, and a court can review the rejection of the application if that's what happens. So in that connection, Your Honor, this district court has already held that the administrative code section is facially unconstitutional. And so to allow the statute to continue to be enforced against Mr. Soror and others, but particularly to my client, there's a substantial likelihood that he will again be harmed by the same statutes that harmed him in the first place, which will violate- But he's got his license, right? Right. So what else can happen? I mean, what else realistically can happen short of having his license stripped? So every three years, every rifle shotgun licensee is required to renew their rifle shotgun license. And the moral character provision of this administrative code is very unlike the moral character amendment to the CCIA. Where in the Antoinette case, Your Honor- I was wondering if Antoinette was going to come up at all. I mean, I think I'll jump in a little bit to address, I think, the concerns that- Or perhaps what your response would be to Judge Loyer on this is that you are still seeking to have this provision declared unconstitutional. And so you're making a facial challenge. So independent of whether or not this has the ability, I guess, to in the future hurt your client, that is still out there. The injunctive relief was granted and the declaratory relief saying this provision is unconstitutional, and you would still like us to address that. And if that's the case, I guess then my question would be, does an Antoinette control here? Because it's already said that a good character provision of this kind is capable of being applied in a constitutional fashion. And so this is not subject to a facial challenge. And I'll rest on my brief generally, but specifically here, the language of the code that's being challenged here is the same language as the pre-CCIA language of the New York State Penal Law handgun statute, which is just good moral character, and it's undefined. And that administrative code exists. And if it did not exist in that sense, then the city would not-the police department would not be able to enforce the good moral character. Right. Which is very broad. Right. But, I mean, I gave your colleague on the other side some pushback on this idea that we should look only to the regs and not to the code, which has not changed. But it is clear part of what the analysis is in Antoinette and in Bruin is looking at how a statute will be enforced. And here, where we have these regs that take the language from the CCIA and tell you this is how good character is going to be enforced, that is relevant to the question, isn't it? It's relevant in the sense that they're saying now that this is how the statute or that the regulation is going to be enforced. And one thing I didn't mention is that this issue was raised for the first time in the reply brief of the city. And we did not have an opportunity to brief the issue of mootness, so I'll just bring that to the court's attention. Here's your opportunity. I'm doing it now, yes. All right. So, with respect to the language of the regulations, the police department regulations in 38 RCNY 3-03 for rifles and shotguns, the preamble language changed to mirror the penal law section for handguns licensing of the dangerous language. However, the factors did not change. And there remain factors, factors A through N, that have nothing to do with dangerousness. But I surmise that pretextually the city could always make the argument that perhaps they, you know, do deal with dangerousness. But without the code specifically saying, which is the legislative body, the police commissioner is not a legislative body, the code, without the code being amended to say that to mirror the language of the handgun statute, then the police commissioner still retains broad discretion, notwithstanding the language in the preamble that's been amended, to enact. That sounds more like an as-applied challenge, that you're giving a scenario where it is possible that this could be applied in a way in the future that's unconstitutional. If you're just raising a facial challenge, you have to show that as written, as applied, or likely to be applied now, that there is no sort of constitutional, potential constitutional application of this. Right. So below, I did challenge the various factors, and specifically the ones that were applied to Mr. Soror, which the court below deemed were, had been amended because the preamble had been amended, but did not address the factors that remained exactly the same. For instance, having a poor driving history. That remains as a factor. Facially, I would argue, is unconstitutional that someone's driving history and license suspensions is something that could be translated into a dangerousness issue. And I would also say that with regard to the other, I believe it was subsections A, E, H, and N, with regard to those factors, that the city has failed, and did fail below, to identify any history or tradition of stripping someone of their constitutional rights because of factors that don't rise to the level of a sui generis of a felony conviction or dangerousness. So that is not right. And actually, in your brief, you acknowledge that marginalized groups, as you put it, African-Americans, Native Americans, other groups, were historically and traditionally stripped of their gun rights for generations. Yes, and Your Honor, I'm glad that you raised that issue because those, as abhorrent as they are… So let me just ask the question. Why ignore that history? No, I don't think we should ignore that history. The dangerousness assessment that was placed upon individuals because of their skin color and racial origin is not comparable and not analogous to the dangerousness assessment that is being applied here. Because the dangerousness assessment back then, abhorrent and inexcusable, still – it was not an individualized assessment. It was still a broad assessment of a group of individuals, not an individual assessment by a government official. So is there not history of individualized assessments that also consider someone's race or background? But they're not individualized assessments. They're assessments broadly covering a group of individuals, broadly, not Mr. Smith, who we're going to look at his specific driving history. They are grouped into a blanket, so to speak, over a specific race or a specific nationality or native origin. But that being said, with the 14th Amendment, which McDonald said was not a watered-down version of the amendments to be applied to the states and enforced against the states, the 14th Amendment did not restrict the rights. It didn't water them down. It enlarged the people. It included people that had been excluded, like freed black men or Native Americans. It made the amendments applicable to everyone. And therefore – and just getting back to the other arguments that I had made with regard to the analysis in Antonyuk, which only dealt with concealed carry of handguns. The Antonyuk opinion also was directly linked to licensing statutes. And the reasoning in the Antonyuk opinion, respectfully, was tied to the fact that individual government officials were making character assessments as part of a licensing scheme. But licensing of handguns didn't exist back in 1791, but moreover, has never existed for long guns, for rifles and shotguns, and it's never been part of this national tradition. So on – this has been about the merits, but let me just go back for a moment. So there was a claim of retrospective – for retrospective relief. Is that right? Yes. What is the current status in your view of that? The current status is we would proceed on a hearing on damages because the court held that the application – the court held that Administrative Code 10-303, the two subsections, A2 and A9, violated the Second Amendment and that the city failed to identify a national tradition to support their regulations. And so with regard to the monetary claim – Yes, that would proceed. It's not before us. Correct. Correct. And you've got – you accurately point out that there are lots of interesting questions here that remain open, and you'd like to have them decided and your client would like to have them decided. But it remains the case that your client has been granted a license. He has absolutely no basis to say that if he is – if he loses the license and has a new complaint to make, that he won't have the opportunity to make that complaint and to get review of the denial. So the case insofar as it concerns the appeal from the injunction that was granted is moot. The evading review thing was something designed for instances like a pregnancy, which lasts for a limited period of time, and then pregnancy ceases for one reason or another. And so the opportunity to get review can disappear because of the passage of time. But if he loses his license or is denied an application for a license in the future, that denial will remain at all times. And no matter how much you may want to get answers to questions, very valid questions that you are raising, the appeal from the injunction that was granted with respect to a license that he now has, that's moot. With respect to the likelihood of repetition – You're just saying about likelihood of repetition that he'll suffer injury. If he loses, there will be a time in which he suffers injury before he can get. But that's true of every such circumstance where something is mooted by the grant of the thing that the person was complaining about not having gotten. Actually, not exactly. The city's example in the Hasoon v. Searles case is not something that could have been repeated because the plaintiff in that case brought a habeas petition and was then exported, sent back to another country. I'm talking about your denial of a license. If he loses his license, if he has something to complain about that arises in the future because he doesn't get whatever he wants with respect to gun licensing, he has the opportunity to use the courts to get review of it. And he will suffer a enumerated constitutional violation. That's true for every such case. Every case that you can imagine where somebody is mooted by receiving what he's complaining about not having gotten, the thing you just said is always true of them. It doesn't mean it evades review. He gets review. And if he suffers harm, just as you now have your case pending, still pending, for damages for the prior, he'll have that available to him as well as the opportunity to get injunctive relief. But now he's gotten what he wanted. There's no possibility that a future denial- That's not true, respectfully. That's not true. There's no possibility of a future denial. There's no denying that a future denial will evade review. I didn't say there's no possibility of a future denial. I said there's no possibility that the future denial will evade review because there is review. But that's the point of this exception to the mootness doctrine for Article III is that cases that are capable of repetition yet evading review are not subject to the mootness doctrine. And this is one of them because- So there are two components. Capable of repetition, which is the component on which you've been very focused. The second component is evading review, which means that if it is repeated, it can't be reviewed. Judge LaValle mentioned the pregnancy context. Once that's done, we can't help you. Here, it seems to me, but maybe we've got something wrong, that if, let's just say that his license is not renewed or something happens with the current license, tell me, explain to me why a court couldn't at that point review his challenge to that circumstance, that act by the city. Sure. Well, the court could review that. Yes, Your Honor, that is true. And the city has a history of mooting cases. Why then, having started your answer in that way, is it evading review? Because there has already been a determination between these two litigants that their regulations are unconstitutional and they're facially unconstitutional. And so the exception to the Article III mootness theory or application seeks to ensure that a litigant will not have to endure the same litigation again in the future when there is likelihood that the same harm will come to him going forward from the same government agency body. Well, you're once again leaving out the evading review. And as Justice Lohier pointed out, there will be the opportunity for review. Now, you could go and say, no, we're wrong, and we can go through the whole thing 46 times if you'd like, but you haven't dealt with evading review when there will be review. Well, then respectfully, I would just say that we're evading review now because the court has already said that this statute, this regulation is facially unconstitutional, yet it's going to continue on. Thank you very much. Thank you. Your Honor, I'm so sorry. I misspoke earlier, and I conceded a point that I had not intended to because I just did not fully think it through at the moment. I'm so sorry. I'm happy to concede a minute of my time to allow counsel to respond. But when I said for the Munsinger vacator, as opposed to the what was what was moot, a Munsinger vacator would vacate the entire judgment, including the portion that awarded. That ruled erroneously. That's why I followed up on you. Yes, and I'm so sorry. Please take that back, and I'm sorry for wasting your time. So let me address that. So the point is that there are mistakes in this decision, abundant mistakes, mistakes about Ant and Yuckup states, about state law. All of those mistakes will evade review here, speaking about what we've just talked about, because Mr. Sorrell no longer has any ongoing interest in this litigation. And what happens when a litigant loses any ongoing interest in the claim, while the claim is on appeal, is the court cannot review it. And as a result, to avoid the ongoing legal consequences, the unreviewable judgment is vacated in whole, not in part. And I'm so sorry that I got that entirely wrong. So it is true that what he... It's only about the injunction. It's not only about the injunction, because this court can't review... Vacating it doesn't mean you reject anything that was said in it. You just say it's vacated because it's moot. Not because it was wrong, but because it's moot. That's right, but what you would vacate... So any mishap that he gets with respect to future licensing, he'll be able to complain about in full and get review of them. That's right. I'm trying to separate. There's a couple of different claims we're talking about. There's the claim, the retrospective claim about 2019 unconstitutional, all of that. That claim was a part of the declaratory relief, and that claim will... The decision granting relief on that claim would be vacated as well, because the Munsinger vacator will vacate the entire decision and judgment. The reason that that's necessary is because this court can't review the error that pervades that decision as a result of the fact that Mr. Sorren no longer has an ongoing interest in the claims here. He has a license. And to address the one point that my adversary has been insisting, that this evades review, the reason that's incorrect is that 28 Rule of the City of New York 3-03 provides that after a person loses their... Sorry. Yes. After a person has been granted a license after three years, it's presumptively renewed unless new facts come to light. So there's no way that his character is automatically... It's not reassessed. So unless he's rearrested, unless something... He again decides to violate laws. It's not just driving history. It's ignoring direct instructions about not doing certain things for public safety reasons. So he was told, this is illegal, don't do this. And then he did it again. So he was charged with violations of the navigational law. So that kind of thing happens again. Then his character could be reassessed. But it's not based on any old conduct, which is why it doesn't evade review. The point is because this court is unable to review the errors, the entire judgment is vacant. Sorry. You could have appealed. The city could have appealed. No? Well, we did. We filed a notice of appeal from the entire order. And we explained that the entire decision is incorrect and that it is premised on a mistake about the law, which I understand Your Honor pushed back about. But it's premised on a mistake about state law and what constitutes the handgun license permitting. It's also premised on a mistake about good moral character and the Second Amendment. And as I had explained in our brief pretty thoroughly, I think the Second Amendment, it's entirely consistent with the original public understanding of the Second Amendment to regulate and disarm individuals who are deemed dangerous. And, in fact, there are laws that do it on a discretionary basis that don't just, that didn't as a historical basis just do it by groups. And, in fact, even those laws that did it by groups involved discretion, questions about who qualifies, which are not always as black and white as counsel would suggest. You also have these discretionary laws about loyalty oaths. So is this person someone who might take up arms against the country? That is just the same kind of individualized assessment. Is this person too dangerous to have a firearm? And it continues through to surety laws. Surety laws where an individual sheriff were ever deciding, this individual is too dangerous to have a firearm without placing a surety. And those the Supreme Court recognized are the laws that are the linear descendant of modern licensing regulations and individual determination. So there's no way that that is a clear question on the Second Amendment. And, I mean, there's no clear question. It's the opposite. There is a clear answer under the Second Amendment as opposed to some sort of open question. And this Court confirmed it in antinatal. If he loses his license in the future, will he have, will he be able to get court review? Of course. But, also, why would he lose his license? I mean, if he does something that would cause If he loses his license, will he have court review? Yes. He can file an Article 78 proceeding directly from that license for denial and seek review in the state courts and administrative review. Or he can file a lawsuit in federal court if he believes that that denial was, rather than arbitrary capricious, just a challenge to the entire scheme. But his objection on Second Amendment grounds to the handgun permitting scheme, the idea is that it interferes with his ability to get that license. That's the whole underlying premise of his lawsuit. And he has a license. But how does this, I mean, can you explain the distinction between this situation and the, I don't know if it's pronounced Fickrey case, where the court looked at the idea that someone's challenging being placed on the no-fly list. They're removed from the no-fly list and tried to argue, well, it's moot now. But the court recognizes that the person could be put back on the no-fly list. And so, although each time the person is put on that list, yes, they can challenge it again. But the court said that's not the type of situation that we're going to observe. I believe there is a far less robust administrative state relating to the no-fly list than there is here. What we have is a regulatory regime that is, in fact, more channeled than many other parallel jurisdictions across the country that just say suitable person, right? The Bruin cited, I think, at least three states that had sort of discretionary character-like requirements in a footnote, I think it's footnote 9 of the decision. And it says suitable person. And those leave open a question. Here, we have that discretion is actually channeled even further. Not only is it about dangerousness, but then there's a set of considerations. And so, if the question is the objection to this standard is not that some arbitrary, you know, we can just put them back on and take them off, give them a license and take it away. This is actually a robust regulatory scheme by a government trying to do the right thing, not an ad hoc determination. And the presumption of government regularity really should cut in favor of the government and makes the fact that we have a sweeping universal injunction, permanent injunction on our law, all the more troubling. It's not an ad hoc determination of an individual person like a no-fly list question. And as I understand it, the challenge was to the code was that either alone or in conjunction with the police commissioner's regulation confers too much discretion. And that is untrue. That's the core of the challenge. That is the core question. And fundamentally what happened is the district court looked at the code and said the code operates independently of all other laws. And because the code just says here is a regular, here, I mean, all the code says is the police department shall assess moral character when doing handgun licensing and shall do handgun licensing. I'm sorry, handgun, rifle, shotgun licensing. So, there was no need for city council to go and sit together and tend to enact a brand new law that says the exact same thing. The police commissioner shall use good moral character. Good moral character is a term of art under state law. It's been defined as a parallel provision of the state's handgun licensing regime. It goes back to the Sullivan Law in 1913. There was no need to reenact it. The law has the definition of that provision has changed. What has been considered good moral character has changed in our society. But that provision has changed significantly with Bruin and the CCIA and the city regs. So, just yet another housekeeping matter. On retrospective relief, because now I'm a little less clear. I'm sorry. It is, and that is my fault, and I apologize profusely. Briefly, briefly. What is the city's position now with respect to vacature? When this court vacates the judgment and decision below on a Munsinger vacator, the entire decision would be vacated because this court can't review the merits because of plaintiff's lack of standing. And as a result. Why? So, why? Alternatively, this court could decide that that portion of the appeal is not moot and reverse because it is incorrect as a matter of law. Both as just a matter of understanding what the state law meant. The issue is that you didn't appeal this. You didn't appeal that part. Well, we did. Our notice of appeal was from the judgment, from the decision and order and judgment. Okay. You didn't argue that part at all? Well, we argued that the second amendment analysis was incorrect. That, first of all, it was incorrect because it separated both before and after the rules of the city of New York. But before the- You told me when you got up there the first time, and I appreciate your candor. I'm so sorry. But I think you told me that that issue is not, the issue of retrospective relief is not before us. That was my mistake. To the extent that we're speaking about the Munsinger vacator, the way that that vacator ought to work is that because the decision has been rendered unreviewable, because Mr. Sroor has no interest in the outcome of this case. He has no interest in the constitutionality of this provision because he has a license under it. As a result, that determination should be vacated. He has an interest in the surviving claim for damages for the review. That's right. So the legal determinations underlying that decision, though, are not reviewable now. Or if the court disagrees and believes they are reviewable, then, as we explained in our brief, the district court decision is simply incorrect. It's incorrect on the Second Amendment analysis. It's incorrect in its understanding of state law. It's incorrect with the prospective claims that he didn't, were not justiciable in the first place. All right. So I'm going to give, at your invitation, counsel- Yeah, and I apologize. To respond to that. Okay. I'm sorry. Counsel, do you want to respond to that? Or I'll give you an opportunity to submit a brief letter in response. Take your pick. If I could have just an outline of the scope of what Your Honor is looking for me to do, and I'd prefer to submit a brief letter. In response to this argument that we should vacate the entirety of the case, not just- No, the judgment. Well, the judgment, the whole judgment, but as she put it, the case. But the judgment involving the entire case, including the determination on retrospective relief, which I understood was an ongoing issue. That is the issue. Should we vacate that, or should we focus only on the permanent injunction, injunctive relief that was provided? Thank you, Your Honors, and I will choose to submit a letter brief to the court on that issue. If you do that, can you do that by this Thursday? Yes. Closed business? That would be great. Yes, and I know we've gone over time. May I just make one very brief point, and that is that the city did concede that on renewal, that as long as my client stays out of trouble and, for instance, does not violate the navigational law, which involved the jet ski incident, which clearly is not a dangerousness assessment, that his license could be non-renewed. Thank you. Thank you. Rule of reserve decision.